UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HECTOR SERANO SALINAS,<br><br>                Petitioner,<br><br>   v.<br><br>DONALD HOLBROOK,<br><br>                Respondent. | Case No. C18-249-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Hector Salinas is a state prisoner who is currently confined at the Washington State Penitentiary in Walla Walla, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2010 Whatcom County Superior Court judgment and sentence. Respondent filed an answer to petitioner's petition together with relevant portions of the state court record, and petitioner filed a response to respondent's answer. This Court, having reviewed petitioner's petition, the briefing of the parties, and the state court record, concludes that the petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## BACKGROUND

The Washington Supreme Court, in petitioner's personal restraint proceedings, summarized the basic facts relevant to petitioner's case and to his federal habeas petition as follows:

> In 2010, a jury convicted Salinas of three counts of first degree rape and one count of first degree kidnapping concerning his assault on a homeless woman at a Bellingham park. He was sentenced as a persistent offender to life without the possibility of release. Salinas's direct appeal raised numerous substantive issues challenging his conviction and sentence. Division One of the Court of Appeals affirmed his conviction and persistent offender sentence, but remanded for vacation of the kidnapping conviction and for a determination regarding whether the rapes constituted the same criminal conduct.
>
> Within a year of the resolution of his appeal, Salinas filed the current PRP alleging a violation of his public trial right during jury selection and that his appellate counsel was ineffective for failing to raise the issue on direct review. The relevant facts concerning jury voir dire are as follows:
>
> More than a month before trial, Salinas's defense counsel filed a proposed jury questionnaire and instruction that informed prospective jurors:
>
>> Some of these questions may call for information of a personal nature that you may not want to discuss in public. If you feel that your answer to any question may invade your right to privacy or might be embarrassing to you, you may so indicate on the form that you would prefer to discuss your answer in private. You will find instructions for this on the questionnaire.
>
> Question 26 then asked whether the juror would prefer to discuss the answer to any of the questions "*privately rather than in open court*," and asked the juror to identify the questions by number. Several of the questions asked about jurors' experience with sexual abuse or misconduct.
>
> Defense counsel filed two more proposed juror questionnaires before the trial date. All three questionnaires provided the same advisement to jurors noted above, asked similar questions about sexual abuse or misconduct, and asked whether the jurors would prefer to discuss their answer to some questions "privately rather than in open court." The prosecutor did not file a proposed questionnaire, did not agree with some of the questions in the defense questionnaire, and did not request private voir dire.

REPORT AND RECOMMENDATION
PAGE - 2

On March 8, 2010, the trial court's questionnaire given to the jurors was filed in open court. The questionnaire included several of the same questions defense counsel had proposed regarding experience with sexual abuse or misconduct, and similarly advised:

> [I]f your answer to any of the following questions is of such a "sensitive nature" that you would like to discuss it "privately", please identify those questions by number here: _____

During pretrial motions that same day, the trial court noted that seven of the prospective jurors had indicated on their questionnaires that they wanted to speak in private. The judge suggested that the jurors be sworn in and that the jurors who wanted to speak individually could be dealt with first, before the rest of voir dire. At the end of pretrial motions the next day, defense counsel suggested:

> I have a suggestion to help the jury here. I don't know if the Court is willing to do this is [sic] that we take a break now and bring the jury up here, get them sworn, and let the ones go that don't want to talk in private.

The judge indicated that was what he had in mind: to swear the jury in and go through the basic qualifications. The prosecutor stated, "[W]hen you're talking about taking them in privately"—to which the judge responded, "I'm going to ask if there's anybody in the courtroom who has an objection, otherwise we have to do it in open courtroom."

Later that day, after inquiring whether all of the prospective jurors had filled out the questionnaire, the judge informed the venire:

> As you can see by that [questionnaire], this is a case that might involve some matters which might be of a sensitive nature. In this case, I'm going to offer an opportunity to those who have indicated that they wish to speak in private about some issues the chance to do that. That is the first thing we will undertake, and then we will go through the general process of picking a jury which will start this afternoon.

After addressing some other matters, the judge returned to the issue of voir dire, noted that some potential jurors had requested to speak in private, and inquired:

> Is there anyone in this group or *anyone* in this courtroom at this time *who has any* objection whatsoever to the Court conducting a short interview with each of those jurors, potential jurors with counsel and the defendant *in my chambers* all on the record to

REPORT AND RECOMMENDATION
PAGE - 3

> determine what their concerns are and be able to have them answer those questions or tell them what their concerns are *in private*? Is there anyone here that has any objection to that?

The court then directed the jurors who wished to speak privately to return at 1:30 p.m. and the remainder to return at 2:30 p.m. After the recess, the court inquired again:

> I would ask if anyone has an objection to us speaking to them *in private* with us and counsel and defendant and the court reporter? Then I will go into chambers. Counsel will come in. The attorneys will come with me. The court reporter will set up, and Ms. Ortner will bring you in one at a time.

The record indicates that when the trial court twice called for objections, to the limited in-chambers questioning, no one objected.

During in chambers voir dire, jurors discussed their own and their families' criminal histories and experiences with sexual abuse. As a result of the individual voir dire, three of the jurors were excused for cause.

As noted, following Salinas's conviction and resolution of his direct appeal, he filed the present PRP asserting that the in-camera questioning of some potential jurors violated his public trial right. The PRP contended that the trial court's failure to conduct a *Bone-Club* analysis before conducting in-chambers voir dire requires reversal of his conviction and that he was denied effective assistance of appellate counsel when his appointed attorney failed to raise the public trial issue in his direct appeal. Division One agreed, reversing his conviction in an unpublished decision. The State moved for discretionary review, contending that Salinas was foreclosed from raising the voir dire public trial right violation because he had invited the error. This court granted review.

(Dkt. 12, Ex. 34 at 1-6 (citations and footnotes omitted).)

On January 4, 2018, the Washington Supreme Court issued an opinion reversing the decision of the Court of Appeals and denying petitioner's personal restraint petition. (*Id.*, Ex. 34.) The Supreme Court issued a certificate of finality on January 30, 2018. (*Id.*, Ex. 35.) Petitioner now seeks federal habeas review of his conviction.

REPORT AND RECOMMENDATION
PAGE - 4

DISCUSSION

Petitioner raises a single ground for relief in his federal habeas petition. Specifically, petitioner asserts that his appellate counsel rendered ineffective assistance by failing to argue on direct appeal that petitioner's right to a public trial was violated when the trial court privately questioned some potential jurors in chambers. (Dkt. 4 at 5.) Respondent concedes that petitioner properly exhausted his claim in the state courts. (Dkt. 9 at 7.) Respondent argues, however, that the Washington Supreme Court reasonably denied the claim in petitioner's personal restraint proceedings. (*See id*. at 18-20.)

Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>Ineffective Assistance of Appellate Counsel</u>

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right from his criminal conviction the assistance of counsel. *Douglas v. California*, 372 U.S. 353 (1963). This right to counsel comprehends the right to effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are

evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. In order to establish deficient performance in the appellate context, a petitioner must demonstrate that counsel acted unreasonably in failing to discover and brief a meritorious issue. *Robbins*, 528 U.S. at 285. Prejudice in the appellate context requires a petitioner to demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, petitioner would have prevailed on appeal. *Id*. at 285-86.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

At issue in this case is whether petitioner's appellate counsel rendered ineffective assistance by failing to raise a public trial violation claim on direct appeal. The Sixth Amendment provides criminal defendants the right to a public trial. U.S. Const. amend. VI. The press and the public also have a qualified First Amendment right to attend a criminal trial. *See Waller v. Georgia*, 467 U.S. 39, 44-45 (1984) (citing *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555

(1980)). The Supreme Court has recognized that the public trial right extends to voir dire proceedings. *Waller*, 467 U.S. at 45 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984)). The public trial right was created for the benefit of defendants, and allows for the public to see that the accused is treated fairly, helps ensure that the judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id.* at 46; *United States v. Sherlock*, 962 F.2d 1349, 1356 (9th Cir. 1989).

However, the right to a public trial is not absolute. It "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. The Supreme Court has made clear that "[t]he central aim of a criminal proceeding must be to try the accused fairly." *Id.* at 46; *see also Press-Enterprise Co.*, 464 U.S. at 508 ("No right ranks higher than the right of the accused to a fair trial.").

A violation of the right to a public trial is a structural error. *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017). However, the Supreme Court has recognized that a public trial violation, though structural in nature, does not render a trial fundamentally unfair in every case, and that the remedy for addressing such a violation depends upon the context in which it is raised. *Id*. at 1910. In *Weaver*, the Court explained that "in the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Id*. However, when a public trial violation is raised in the context of an ineffective assistance of counsel claim, the *Strickland* standard applies and a defendant must show either a reasonable probability of a

PAGE - 8

different outcome in his case or show that that the public trial violation was so serious as to render his trial fundamentally unfair. *Weaver*, 137 S. Ct. at 1910-11.

As noted above, the Washington Court of Appeals granted petitioner's personal restraint petition. (*See* Dkt. 12, Ex. 29.) In so doing, the Court of Appeals explained that the wrongful deprivation of the public trial right is a structural error presumed to be prejudicial on direct appeal, and that the failure of petitioner's appellate counsel to raise the issue on direct appeal therefore constituted ineffective assistance. (*See id*.) The Court of Appeals, in reaching this conclusion, rejected the state's arguments that petitioner invited the trial error or, in the alternative, that petitioner waived his public trial right. (*Id*.)

The Washington Supreme Court granted review and reversed the decision of the Court of Appeals. The Supreme Court, in rendering its decision, first addressed the state's argument that petitioner invited the public trial error and was therefore precluded from raising the error on appeal or in his personal restraint proceedings. The Supreme Court agreed that petitioner had invited the public trial error:

> Given defense counsel's role in initiating the request for private questioning, defense counsel's advocacy for private questioning (including repeated submission of proposed juror questionnaires that provided for such questioning), defense counsel's active participation in the private questioning, defendant's benefiting from such questioning, and defense counsel's failure to object to such proceeding, under these facts defense counsel not only "materially contributed" to the private questioning but also took "affirmative and voluntary action to induce" such private questioning. We hold that under these facts, petitioner may not now assert a public trial error concerning the private questioning of jurors because he invited such error.

(*Id*., Ex. 34 at 10-11 (citation and footnote omitted).)

The Supreme Court went on to discuss petitioner's ineffective assistance of appellate counsel claim in light of its conclusion with respect to the issue of invited error. The Supreme

REPORT AND RECOMMENDATION
PAGE - 9

Court concluded that because petitioner had invited the public trial error, he could not demonstrate that his conviction would have been reversed if appellate counsel had raised the public trial right violation on direct appeal and, thus, he could not demonstrate prejudice from counsel's failure to raise the issue. (Dkt. 12, Ex. 34 at 13.) The Supreme Court then went on to discuss at length the issue of structural error and presumed prejudice, an issue which was central to the Court of Appeals' resolution of petitioner's personal restraint petition in his favor. The Supreme Court noted that this issue had been clarified by the United States Supreme Court in *Weaver*, and then went on to explain as follows:

> The core holding of *Weaver* is that if defense counsel objects to courtroom closure at trial and raises the issue on direct appeal, prejudice is presumed and defendant gets a new trial. However, where the courtroom closure issue is raised later, e.g., as in *Weaver*, in a motion for a new trial based on allegation of ineffective assistance, finality concerns prevail such that the burden is on defendant to show a reasonable probability of a different trial outcome or to show that the particular public trial violation was so serious as to render his trial fundamentally unfair. In other words, absent a timely preservation of the public trial error and a timely raising of the issue on direct appeal, a defendant alleging a public trial violation generally must show prejudice in order to get a new trial. . . .
>
> . . . .
>
> Applying *Weaver* to Salinas's case, it is clear that *Weaver* refutes Salinas's contention that prejudice is presumed in this context. *Weaver* rejects the notion that the voir dire closure in *Salinas*, even though such closure is "structural error," is presumed prejudicial. In Salinas's case, there was no objection at trial and no assertion of a public-trial violation on direct appeal. In this circumstance, *Weaver* places the burden on the defendant to prove he was prejudiced by such closure. Salinas has not met that burden.

(*Id.*, Ex. 34 at 13-14, 18.)

Petitioner fails to demonstrate that the Washington Supreme Court's decision rejecting his ineffective assistance of appellate counsel claim was contrary to, or constituted an unreasonable application of, clearly established federal law. The United States Supreme Court's

REPORT AND RECOMMENDATION
PAGE - 10

decision in *Weaver* constitutes clearly established federal law relating to petitioner's ineffective assistance of counsel claim.  As the Washington Supreme Court correctly determined, under *Weaver*, prejudice is not presumed when counsel fails to raise a public trial error on direct appeal.  Rather, a petitioner must show prejudice in order to prevail on such a claim.  Given the Supreme Court's determination that the public trial error was invited, a determination which petitioner does not challenge in any meaningful way in this proceeding, the Supreme Court reasonably concluded that petitioner failed to establish prejudice   This is so because if appellate counsel had raised the public trial error claim on direct appeal, the state courts would have presumably reached the same conclusion with respect to the invited error argument as the Supreme Court reached in this proceeding, and therefore would have rejected the claim.  Because the Washington Supreme Court applied the correct standard in evaluating petitioner's ineffective assistance of appellate counsel claim, and reasonably rejected that claim, petitioner is not entitled to relief in this federal habeas action.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that

REPORT AND RECOMMENDATION
PAGE - 11

petitioner is not entitled to a certificate of appealability with respect to the claim asserted in his petition for writ of habeas corpus.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 8, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 9, 2018.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 18th day of October, 2018.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge